UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LINDA BEEMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>JOHN CRUZ, individually and as employee of the AMADOR COUNTY SHERIFF'S DEPARTMENT; AMADOR COUNTY SHERIFF'S DEPARTMENT; COUNTY OF AMADOR; and DOES 1 through 50, inclusive,<br><br>            Defendants. | No. 2:21-cv-01774 WBS DB<br><br>ORDER RE: MOTION TO DISMISS COMPLAINT |

----oo0oo----

Plaintiff Linda Beeman brought this action against Amador County, the Amador County Sheriff's Department (the "Department"), Detective John Cruz, and unnamed Doe defendants 1-25 (collectively "defendants") seeking damages under 42 U.S.C. § 1983 for alleged violations of rights protected by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. (See Compl. (Docket No. 1).)  Plaintiff challenges damage defendants

1

allegedly caused to her property during their execution of two warrants at her home and challenges her arrest, which she contends was pursuant to an improperly obtained warrant. (See id. at ¶¶ 11-17.)  Defendants now move to dismiss plaintiff's complaint in its entirety.  (See Mot. (Docket No. 4-1).)

I.   Factual and Procedural Background

Plaintiff is the mother of Jerry Adams, whom the Department and Cruz have suspected murdered Savannah Burger since October of 2020.  (Compl. at ¶ 9.)  On November 5, 2020, Cruz and the Department executed a search warrant at plaintiff's residence, causing $711.17 worth of damage to the premises and plaintiff's possessions.  (Id. at ¶ 11.)  On or about January 20, 2021, the Department returned to plaintiff's residence to serve an arrest warrant on Jerry Adams, who was not present, and in the process caused an additional $3,650.88 worth of damage.  (Id. at ¶ 13.)  On February 3, 2021, plaintiff submitted a claim to the County for the damage caused on both occasions, which the County rejected via letter on March 31, 2021.  (Id. at ¶ 14.)

Plaintiff alleges that on March 12, 2021, defendants caused the Amador County District Attorney's Office to file a criminal complaint against her.  (Id. at ¶ 15.)  That complaint alleged she was guilty as an accessory after the fact for aiding Jerry Adams by wiring him $200 on January 21, 2021, the day before he was criminally charged.  (Id. at ¶¶ 15, 20.)  Plaintiff alleges that the resulting warrant for her arrest, which Cruz executed, was based on Cruz's false statements that plaintiff was aware Jerry Adams was a fugitive when she wired him the money and that she did so to help him avoid arrest.  (Id. at ¶¶ 16, 20.)

2

Plaintiff was arrested on March 16, 2021 and was released on March 29, 2021. (Id. at ¶ 17.) During that time, she was terminated from her employment at the California Department of Corrections and Rehabilitation, though she was eventually reinstated without pay for the interim period. (Id. at ¶¶ 18-19.)

Plaintiff alleges that at the time she wired the money, "there were no known allegations about her son being a fugitive or a defendant in a murder case." (Id. at ¶ 20.) Rather, she alleges, she wired it "for the purpose of him returning to Jackson, California to answer to the allegations which were being made against him," which Anthony Adams[1] told Cruz on March 3, 2021. (Id. at ¶¶ 17, 20) She alleges that Cruz knowingly misrepresented this detail when seeking to have her charged as an accessory and that Cruz had never been told she wired Jerry Adams the money to facilitate his escape. (Id. at ¶ 24.) She further alleges that at a preliminary hearing in her criminal case, Cruz admitted there was a conflict between his initial report and Anthony Adams's statement, and that the District Attorney dismissed the charge against her. (Id. at ¶¶ 22, 25.) She alleges that this series of events shows that Cruz "intend[ed] to ruin Plaintiff's life by misstating the facts and getting her arrested and terminated from her employment." (Id. at ¶ 26.)

II. Discussion

Federal Rule of Civil Procedure 12(b)(6) allows for

---

[1] Although the complaint does not identify Anthony Adams, defendants' motion states that he is Jerry Adams's nephew. (Mot. at 9.)

3

dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has alleged "sufficient facts . . . to support a cognizable legal theory," id., and thereby stated "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. Id. Courts are not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl. Corp., 550 U.S. at 555. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

    A.   <u>Defendant Department</u>

In their motion, defendants seek dismissal of the Department as a defendant in this case, arguing that the

Department and Amador County are functionally indistinguishable for purposes of this action and are therefore redundant. (See Mot. at 11-12.) Plaintiff concedes this point and agrees that the Department should be dismissed. (See Opp. at 8.) The court will therefore grant defendants' motion as to the County.

### B. Municipal Liability

That Amador County is named as a defendant indicates, and plaintiff's opposition confirms, that plaintiff intends to pursue a claim for municipal liability under Monell. (See Compl.; Opp. at 9-11); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). However, in her opposition, plaintiff "acknowledges that the Complaint does not address the County of Amador's liability clearly" and seeks leave to amend to allege facts showing that the County fails to enforce its own policies. (See Opp. at 9-10.) She also states that "the complaint fails to address how the facts fit a Monell failure to supervise [claim]" and seeks leave to amend to allege same. (See id. at 9-11.) The court agrees that, on the minimal facts included in the complaint, these claims are not adequately alleged.[2] Accordingly, the court will grant defendants' motion to dismiss the claims against Amador County.

### C. Fourth Amendment Claims

#### 1. Unreasonable Execution of Warrant

The complaint alleges that, on two occasions,

---

[2] The court notes, however, that § 1983 claims for failure to supervise are distinct from claims for municipal liability, and thus a Monell claim will not lie for failure to supervise. See Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); Robertson v. Ferry Cnty., 697 F. App'x 500, 501 (9th Cir. 2017).

1  defendants damaged or destroyed plaintiff's property while
2  executing warrants at her home.  (Compl. at ¶¶ 11, 13.)  The
3  Fourth Amendment protects individuals' right to be free of
4  "unnecessarily destructive behavior, beyond that necessary to
5  execute a warrant effectively."  San Jose Charter of Hells Angels
6  Motorcycle Club v. City of San Jose, 402 F.3d 962, 971 (9th Cir.
7  2005) (quoting Liston v. Cnty. of Riverside, 120 F.3d 965, 979
8  (9th Cir. 1997)).  "When officers obtain a warrant to search an
9  individual's home, they also receive certain limited rights to
10 occupy and control the property; however, the Fourth Amendment
11 binds the officers such that the right to search a home
12 concomitantly obliges the officers to do so in a reasonable
13 manner."  Id. (citation omitted).
14         In evaluating whether a warrant was executed in a
15 reasonable manner, courts "consider both the purpose disclosed in
16 the application for a warrant's issuance and the manner of its
17 execution."  Id. (quoting United States v. Rettig, 589 F.2d 418,
18 423 (9th Cir. 1978)).  This is because "[t]he standard of
19 reasonableness embodied in the Fourth Amendment demands that the
20 showing of justification match the degree of intrusion."  Id.
21 (quoting Berger v. New York, 388 U.S. 41, 70 (1967) (Stewart, J.,
22 concurring)) (alteration in original); see also id. at 974
23 (significant property destruction during warrant execution
24 indicated manner of execution was unreasonable).
25         Although the complaint and documents attached thereto
26 suggest that the damage to plaintiff's home and property during
27 the warrant executions was significant, and an attached letter
28 provides considerable detail about the extent of that damage,

(see Compl. at ¶¶ 11, 13, Exs. 1-2), the complaint fails to allege which officers are responsible for such damage.  This omission is notable because plaintiff's opposition, on the other hand, does in fact identify the officers alleged to have been present during the warrant executions.  (See Opp. at 9 n.1.)

Because an element of § 1983 liability is that the defendant personally caused the alleged deprivation of the plaintiff's constitutional rights, see Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978), plaintiff must allege same to state a claim under § 1983, see Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012).  Here, however, the complaint merely states that Cruz and the Department executed the first warrant, that the Department executed the second warrant, and that plaintiff suffered particular damage to her home and property as a result of each execution.  (Compl. at ¶¶ 11, 13.)  It does not allege how, if at all, Cruz or other individual officers were involved in the property damage.  It therefore fails to state a claim for unreasonable execution under § 1983.

### 2. False Arrest / Malicious Prosecution

Where a plaintiff is arrested pursuant to a prosecutor's independent decision to charge the plaintiff, that decision is ordinarily considered "a superseding or intervening cause of [the] constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution."  See Beck v. City of Upland, 527 F.3d 853, 862 (9th Cir. 2008).  In the Ninth Circuit, "there is a rebuttable presumption that a prosecutor exercises independent judgment

regarding the existence of probable cause in filing a complaint." Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir. 1986) (citing Smiddy v. Varney, 665 F.2d 261, 266-67 (9th Cir. 1981), overruled on other grounds, Beck, 527 F.3d at 865).

Circumstances in which this presumption will be considered rebutted "include situations in which the prosecutor was pressured by police or was given false information; the police 'act[ed] maliciously or with reckless disregard for the rights of an arrested person'; the prosecutor 'relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment on the existence of probable cause for the arrest'; or the officers 'otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.'" Beck, 527 F.3d at 862-63 (quoting Smiddy, 803 F.2d at 266-67; Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004)).

The complaint contains no non-conclusory allegations to plausibly support an inference of any such circumstances here. Plaintiff alleges that, before Cruz sought charges against her, her grandnephew told Cruz her intentions in wiring the money were innocent, and she insinuates that this statement was not relayed to the prosecutor. (See Compl. at ¶¶ 15-17.)  However, both sides acknowledge that at the preliminary hearing the magistrate found probable cause notwithstanding Cruz's testimony about Anthony Adams's March 3, 2021 statement regarding plaintiff's intentions.

Accordingly, the complaint fails to state a claim for false arrest or malicious prosecution.

1         D.    Fifth Amendment Claims

2              With respect to alleged Fifth Amendment violations, plaintiff's opposition simply asserts that the Fifth Amendment is implicated and quotes its Due Process and Takings Clauses before offering the vague statement that "[h]ere, the Defendants have engaged in a pattern of behavior to deny Plaintiff of her civil rights without justification."  (Opp. at 11-12.)  It offers no explanation of how the facts alleged in the complaint demonstrate a violation of either clause, nor citation to any authority suggesting how a Fifth Amendment violation might be alleged.

              The complaint fails to state a claim for violation of plaintiff's rights under the Fifth Amendment.

          E.    Fourteenth Amendment Claims

              In challenging defendants' motion as to plaintiff's asserted Fourteenth Amendment claim, the opposition states only that "[t]he pattern of conduct contrary to the Sheriff's Manuel [sic] Policy of due regard and respect for private property, along with misstating facts and false arrest brings all the Plaintiff's civil rights into play."  (Id. at 12.)  Plaintiff offers no additional argument or authority to suggest how the facts alleged might amount to a Fourteenth Amendment violation.

              The Fourteenth Amendment's Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  See Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Plaintiff's complaint indicates that she believes the damage to her property and her arrest were wrongful or arbitrary.

9

1           However, "[w]here government behavior is governed by a
2  specific constitutional amendment, claims under section
3  1983 alleging unlawful government action must be evaluated under
4  that specific constitutional provision, rather than under the
5  rubric of 'substantive due process.'" Sanchez v. City of Fresno,
6  1:12-cv-428 LJO SKO, 2014 WL 204058, at *5 (E.D. Cal. May 16,
7  2014) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994);
8  Graham v. Conner, 490 U.S. 386, 395 (1989); Picray v. Sealock,
9  138 F.3d 767, 770 (9th Cir. 1998)).  If "the more particular
10 Amendment (in this case the Fourth) 'provides an explicit textual
11 source of constitutional protection against a particular sort of
12 government behavior,'" then courts "evaluate that same conduct
13 . . . under the Fourth Amendment, rather than the Fourteenth
14 Amendment." Id. (quoting Albright, 510 U.S. at 273).  Because
15 plaintiff's relevant claims amount to claims of "unreasonable
16 searches and seizures," U.S. Const. amend. IV, they are properly
17 assessed under the Fourth Amendment, not the Fourteenth.
18          Accordingly, the complaint fails to state a claim for
19 violation of plaintiff's rights under the Fourteenth Amendment.
20          IT IS THEREFORE ORDERED that defendants' motion to
21 dismiss plaintiff's complaint be, and the same hereby is,
22 GRANTED.
23          Plaintiff has twenty days from the date of this Order
24 to file an amended complaint, if she can do so consistent with
25 this Order.
26 Dated:  January 25, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10